IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02179-PAB-CBS

SUSIE VELEZ,

    Plaintiff,

v.

SCL HEALTH-FRONT RANGE, INC., d/b/a Exempla St. Joseph Hospital,

    Defendant.

_____

**AMENDED ORDER**
_____

The matter is before the Court on the Motion for Summary Judgment [Docket No. 25] of defendant SCL Health Front Range, Inc. ("St. Joseph Hospital"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

This case arises out of defendant's allegedly wrongful termination of plaintiff's employment. Plaintiff Susie Velez worked as a registered nurse ("RN") in the operating room ("OR") at defendant St. Joseph Hospital until her discharge on April 15, 2014. Docket No. 25 at 3, Statement of Undisputed Material Fact ("SUMF") 1. St. Joseph Hospital addressed safety and performance issues with plaintiff on several occasions between 2008 and 2014 through annual performance reviews, Personnel Management Interviews ("PMI"), and corrective action forms. *Id.*, SUMF 2-3. On December 20, 2012, RN Denise Huckfeldt, Ms. Velez's manager, and RN Sara Nelson, the OR

---

[1] The following facts are undisputed unless otherwise indicated.

Clinical Educator, met with Ms. Velez to review basic concepts of prepping a patient for surgery. *Id.*, SUMF 4; Docket No. 25-2 at 12, 14. Ms. Nelson found that plaintiff "struggled to retain certain information" and was "not methodical about prepping motions." Docket No. 25 at 4, SUMF 5. After that meeting, Ms. Nelson assigned plaintiff to a different campus and required her to "strictly practice prepping" surgical sites under the supervision of RN Tom Baker. *Id.*, SUMF 6.

Sometime in early 2014, RN Priscilla Olmstead became the manager of the OR. *Id*, SUMF 7. Sometime in February 2014, RN Jason Wojciechowski became the shift specialty coordinator in the OR. *Id.*, SUMF 8.

On January 26, 2014, plaintiff began an approved Family Medical Leave Act ("FMLA") leave after requiring emergency surgery. *Id.*, SUMF 9. On March 10, 2014, plaintiff's physician cleared her to work without any restrictions. *Id.*, SUMF 10. On March 10, 2014, St. Joseph's occupational health physician cleared plaintiff to return to work without any restrictions. *Id.*, SUMF 11. Plaintiff returned to work on March 10, 2014. *Id.* at 5, SUMF 16. Plaintiff testified that St. Joseph Hospital approved her FMLA leave and complied with its FMLA policy, and that no one at St. Joseph gave her any trouble about taking FMLA leave. *Id.* at 4, SUMF 12-13. Plaintiff testified that St. Joseph Hospital treated her fairly in regard to her FMLA leave. *Id.*, SUMF 14; Docket No. 25-1 at 5. Plaintiff admitted that she returned to work in the same position as RN in the OR and that she received the same hours and pay upon returning to work as she held before her FMLA leave. *Id.* at 5, SUMF 15-16. Plaintiff testified that, upon her

return, she needed some assistance to "relearn" some skills for her position, which St. Joseph Hospital provided. *Id.*, SUMF 17.

On March 31, 2014, about two weeks before her termination, plaintiff received her performance review for the year 2013, which rated her as a "solid performer" and stated that she was "a welcome asset to the CP/PV team." Docket No. 26 at 6, ¶¶ 6-8. Ms. Velez was rated as "Superior" or "Solid" in all categories except for attendance. *See* Docket No. 26-3 at 1. In particular, on a scale of 1 (worst) to 10 (best), she received an 8 in the areas of "Critical thinking & Clinical Decision Making," "Clinical Competency," and "Act Safely." *Id*.

On April 4, 2014, St. Joseph Hospital notified plaintiff that she would receive a raise in her hourly rate. Docket No. 25 at 7, SUMF 36. St. Joseph Hospital informed plaintiff that, because she was at the top of her pay grade, she would receive a lump sum payment in lieu of the full raise, to make her raise approximately 2.5% going forward. *Id*. at 8, SUMF 37. St. Joseph Hospital's policy regarding lump sum payments in lieu of an hourly rate increase states that employees "must be on the payroll, employed and in good standing at the time of the lump sum payment in order to receive" the lump sum payment. *Id*., SUMF 38.

On April 5, 2014, Dr. Edwin Lee, an anesthesiologist, sent an email to Mr. Wojciechowski, in which he raised several physicians' concerns about plaintiff's performance as an RN in the OR. *Id*. at 5, SUMF 20.[2] The email reported that on

---

[2] Plaintiff argues that Dr. Lee's email is inadmissible hearsay. Docket No. 26 at 4, ¶¶ 20-23; *see Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (noting that hearsay testimony may not be considered to oppose a motion for summary judgment). Defendant, however, does not offer the email to prove the truth of

3

March 18, March 20, March 31, and April 1, 2014 plaintiff failed to follow instructions, failed to respond to physicians' requests, and failed to correctly perform certain aspects of her job. *Id.*, SUMF 21. Dr. Lee's email further reported that Ms. Velez lacks focus, makes errors in prioritizing what is important, and that "the reason nothing bad has happened so far is that other people in the room (anesthesiologists, OR staff, surgeons) have been able to compensate for the issues before anything happens . . . ." *Id*. at 5-6, SUMFs 22, 23. When Mr. Wojciechowski received Dr. Lee's email on April 8, 2014, he forwarded the email to the OR Manager, Ms. Olmstead. *Id*. at 6, SUMF 24.[3] On April 8, 2014, Mr. Wojciechowski spoke in person with Dr. Lee to investigate Dr. Lee's concerns. *Id*., SUMF 25.

On April 8 or April 9, 2014, Mr. Wojciechowski spoke with Drs. Thomas Rehring, Leo Alfaro, and Christopher Johnnides to investigate Dr. Lee's reports. *Id.*, SUMF 26;

---

Dr. Lee's criticism of plaintiff, but rather offers it to show the effect on the listener, St. Joseph Hospital. Docket No. 27 at 5; *see* Fed. R. Evid. 801(c)(2). Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). "Statements offered for the effect on the listener . . . are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993); *see also Whitington v. Sokol*, No. 06-cv-01245-PAB-CBS, 2009 WL 2588762 at *5 (D. Colo. Aug. 18, 2009); *Zamora v. Board of Education for Las Cruces Public Schools*, 553 F. App'x. 786, 790 (10th Cir. 2014) (unpublished). Because Dr. Lee's email is offered to show the effect on the listener, the Court finds that it is not hearsay and is properly before the Court.

[3]Plaintiff denies Mr. Wojciechowski's receipt of Dr. Lee's email and that Mr. Wojciechowski forwarded the email to Ms. Olmstead. *See* Docket No. 26 at 4, ¶ 24. Plaintiff bases her objection on hearsay, but defendant cites an email from Mr. Wojciechowski to Ms. Olmstead forwarding Dr. Lee's email. Docket No. 25 at 6; *see* Docket No. 25-6 at 2. Plaintiff does not explain why this email would be inadmissible at trial to prove Mr. Wojciechowski's receipt of Dr. Lee's email and as proof he forwarded the email to Ms. Olmstead. By failing to support her denial with citations to admissible evidence, plaintiff fails to deny these facts and they are deemed admitted. *See* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.

4

Docket No. 25-4 at 4. Drs. Lee, Rehring, Alfaro, and Johnnides all found Ms. Velez to be unsafe and stated that they were uncomfortable with Ms. Velez in their operating rooms. Docket No. 25 at 6, SUMFs 27, 28; Docket No. 25-4 at 4.[4] St. Joseph Hospital had not previously received any complaints from Drs. Jason Shofnos, Daniel Maher, Rehring, or Alfaro related to performance issues on March 18, March 20, March 31, or April 1, 2014 concerning plaintiff. Docket No. 26 at 6, ¶ 4. St. Joseph Hospital had not received any concerns from other anesthesiologists, OR staff, or surgeons that they had to compensate for Ms. Velez' performance issues. *Id.*, ¶ 5.

On April 10, 2014, plaintiff failed to properly manage the pulse volume recording machine ("PVR") and created a dangerous situation in the OR. Docket No. 25 at 6, SUMF 29; Docket No. 25-4 at 6-7.[5]

---

[4]Plaintiff denies the allegations made by Drs. Rehring, Alfaro, and Johnnides as hearsay. Docket No. 26 at 4. These doctors' comments about plaintiff were recounted by defendant's Rule 30(b)(6) deponent. However, as with Dr. Lee's email, defendant does not offer them for the truth of the matters asserted, but rather for the effect on the hospital. Docket No. 27 at 5. For the same reasons that Dr. Lee's email is not hearsay, neither are the interviews of the three other doctors. Plaintiff further claims, in support of her hearsay argument, that defendant has not listed the three other doctors as witnesses and thus defendant obviously intends to introduce hearsay statements at trial. Docket No. 26 at 11. However, defendant lists these three doctors as trial witnesses in the Final Pretrial Order. *See* Docket No. 34 at 6.

[5]Plaintiff denies this allegation as hearsay, but the allegation is supported by the Rule 30(b)(6) deposition of defendant, based on investigations of the matter by Michelle Maitland and Mr. Wojciechowski. Docket No. 25-4 at 7. This evidence is not inadmissible hearsay. *See Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) ("When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions."). The testimony defendant cites shows that plaintiff had a PVR readout that indicated no blood flow immediately following a procedure. Docket No. 25-4 at 7. As a result of this PVR readout, the physician was ready to reopen the patient and begin another surgery to correct what he

The next day, on April 11, 2014, St. Joseph Hospital suspended plaintiff pending investigation. Docket No. 25 at 7, SUMF 30. On or about April 12, 2014, Ms. Olmstead explained St. Joseph's safety concerns to plaintiff. *Id.*; Docket No. 25-1 at 6. Plaintiff did not dispute or respond to the concerns in writing or otherwise. Docket No. 25 at 7, SUMF 31. On April 15, 2014, St Joseph Hospital discharged plaintiff because she: (1) made errors in prioritizing what is important in heart/vascular cases; (2) lacked necessary focus; (3) was unable to operate necessary equipment; (4) lacked urgency and was slow to respond in urgent situations; (5) failed to listen to physician instructions; (6) made errors in preparing patients for surgery; and (7) generally demonstrated poor work quality. *Id.*, SUMF 33. Plaintiff admitted that no one at St. Joseph Hospital stated plaintiff was being discharged for taking FMLA leave and that no one at St. Joseph Hospital said anything negative about her FMLA leave. *Id.*, SUMF 34-35.

Plaintiff asserts a Colorado common law wrongful termination claim, an FMLA retaliation claim pursuant to 29 U.S.C. § 2615(a)(2), and a Colorado Wage Claim Act ("CWA") claim pursuant to Colo. Rev. Stat. § 8-4-101 *et seq*. Docket No. 7 at 5-6. On April 24, 2015, defendant moved for summary judgment on all claims. Docket No. 25.

---

believed to be no blood flow. *Id*. Before reopening the patient, the physician asked for a double-check. *Id*. Ms. Maitland came in and ran the machine properly and found that there was proper blood flow. *Id*. Plaintiff had been retrained on use of the PVR on or about March 10, 2014 following a PVR readout which was not done correctly. Docket No. 25-4 at 7.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324;

*see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). The Court must "accept as true all material facts asserted and properly supported in [defendants'] summary judgment motion" and grant summary judgment if, based on those facts, the moving party is entitled to judgment as a matter of law. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2008).

### III. ANALYSIS

#### A. FMLA Retaliation Claim

The FMLA requires employers to allow their employees up to twelve weeks of leave in a year if the leave is requested for, among other things, an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "At the end of the leave, the employee must be reinstated to his or her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1261 (10th Cir. 1998) (citing § 2614(a)(1)). Employers are prohibited from interfering with an employee who exercises his or her rights under the FMLA and from discriminating against "any individual for opposing any practice made unlawful by this subchapter." § 2615(a). Courts have recognized two theories of recovery on FMLA claims under § 2615: an entitlement or interference theory and a

retaliation or discrimination theory. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). Plaintiff asserts an FMLA retaliation claim. Docket No. 7 at 5.

Retaliation claims under the FMLA are considered under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). If the plaintiff successfully establishes her prima facie case, the defendant must offer a legitimate, non-retaliatory reason for the employment action. *Id*. "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id*. (citation omitted).

### 1. Prima Facie Case of Retaliation

To state a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler*, 464 F.3d at 1171. St. Joseph Hospital does not dispute that plaintiff has established the first two elements of a retaliation claim, namely that Ms. Velez engaged in a protected activity when she exercised her rights to FMLA leave and that termination of her employment is a materially adverse action. Docket No. 25 at 11. Thus, to establish her prima facie

case of retaliation, Ms. Velez must show a causal connection between her protected activity of taking FMLA leave and St. Joseph's decision to terminate her employment.

In support of her prima facie case, plaintiff argues that her protected conduct–FMLA leave–was closely followed by her termination. Docket No. 26 at 14. The Tenth Circuit has recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection. *Metzler*, 464 F.3d at 1171 (citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Moreover, where "the termination is *very closely* connected in time to the protected activity" temporal proximity may, by itself, be sufficient to "justify an inference of retaliatory motive." *Metzler*, 464 F.3d at 1171 (citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (emphasis in original)). Here, Ms. Velez returned from FMLA leave on March 10, 2014. Docket No. 25 at 5, ¶¶ 15-16. About five weeks later, on April 15, 2014, St. Joseph Hospital terminated Ms. Velez's employment. *Id*. at 7, ¶ 32. Viewing the facts in the light most favorable to the non-moving party, because Ms. Velez's termination was "very closely connected in time" to her protected FMLA activity, she has established the third and final element of her prima facie case. *Compare Metzler*, 464 F.3d at 1172 (holding that a four-week period between employee's FMLA request and her termination may, by itself, establish causation) *and Ramirez v. Okla. Dep't. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998) (holding that a one and one-half month period between the protected activity and the

adverse action may, by itself, establish causation), with *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (determining that a period of three months between the protected activity and the adverse action, standing alone, is not sufficient to establish causation).

### 2. Legitimate, Nonretaliatory Reason for Termination

Because plaintiff has established a prima facie case of FMLA retaliation, the burden under *McDonnell Douglas* shifts to St. Joseph Hospital to demonstrate a legitimate, nonretaliatory reason for its decision to terminate Ms. Velez. *See Doebele*, 342 F.3d at 1135. It is undisputed that St. Joseph Hospital fired Ms. Velez on April 15, 2014 based on the following grounds: (1) she made errors in prioritizing what is important in heart/vascular cases; (2) she lacked necessary focus; (3) she was unable to operate necessary equipment; (4) she lacked urgency and was slow to respond in urgent situations; (5) she failed to listen to physician instructions; (6) she made errors in preparing patients for surgery; and (7) she generally demonstrated poor work quality. Docket No. 25 at 7, ¶ 33; 25-8 at 2-3. None of these reasons for terminating Ms. Velez are facially prohibited. St. Joseph Hospital has thus articulated legitimate, non-retaliatory reasons for terminating Ms. Velez's employment.

### 3. Pretext

To defeat summary judgment, Ms. Velez must show that there is a genuine dispute of material fact as to whether defendant's explanations for terminating her employment are pretextual. *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1318 (10th Cir. 2006); *Metzler*, 464 F.3d at 1172.

To show that St. Joseph Hospital's explanations for terminating her are pretextual, Ms. Velez offers one excerpt from Dr. Lee's email. That excerpt reads: "I knew [Ms. Velez] was having health issues, but now that she has returned after an extended absence, I have not noticed much improvement." Docket No. 26-4 at 1. Contrary to plaintiff's argument, Dr. Lee's email supports defendant's position that its justifications for terminating Ms. Velez's employment were not pretextual. The email shows that Dr. Lee believed Ms. Velez's performance was inadequate, recounting four separate occasions in the operating room in which Dr. Lee or other physicians considered Ms. Velez's activities to be dangerous to patients or in violation of hospital protocols. *Id*. at 1-3. No reasonable factfinder could read the email to imply that Dr. Lee's concern was plaintiff's use of FMLA leave as opposed to deficiencies in plaintiff's performance.

Plaintiff offers no additional argument to support her retaliation claim other than conclusory legal arguments. Conclusory argumentation accompanied by case citations is not enough to show that St Joseph Hospital's justifications for terminating Ms. Velez were pretextual or to satisfy Ms. Velez's burden under the *McDonnell Douglas* framework. Ms. Velez fails to demonstrate a genuine issue of material fact concerning St. Joseph Hospital's motivation for terminating her employment. Summary judgment against plaintiff is therefore proper as to this claim.

### B. Remaining Claims

Having dismissed plaintiff's claim arising under federal law, the Court next addresses the issue of whether it should exercise supplemental jurisdiction over plaintiff's remaining claims, which are based upon state law. While courts may exercise

supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction." When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed"). *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law). Finding no compelling reason here to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice. *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *see also City of Los Angeles v. Cty. of Kern*, 328 P.3d 56, 2014 WL 3030368, at *3 (Cal. July 7, 2014) (noting that interpretations of § 1367(d) vary between jurisdictions).

## IV.  CONCLUSION

For the foregoing reasons it is

**ORDERED** that defendant St. Joseph Hospital's Motion for Summary Judgment [Docket No. 25] is **GRANTED** in part.  It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiff as to plaintiff's second cause of action.  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that the January 8, 2016 Trial Preparation Conference and the January 19, 2016 Trial are **VACATED**.  It is further

**ORDERED** that, since the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, this case is remanded to the District Court for the City and County of Denver, where it was filed as Case No. 2014cv32544.

DATED December 23, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge